UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LOPEZ,<br><br>    Petitioner,<br><br>v.<br><br>RAYTHEL FISHER, JR.,<br><br>    Respondent. | Case No. 1:19-cv-01486-NONE-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS[1]<br><br>(Doc. No. 10)<br><br>OBJECTIONS DUE IN TWENTY-ONE DAYS |

      Petitioner Daniel Lopez ("Petitioner" or "Lopez"), a state prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 on October 17, 2019.[2] (Doc. No. 1). In response, respondent filed a motion to dismiss. (Doc. No. 10). Respondent filed the state court record in support. (Doc. No. 12). Petitioner filed an opposition. (Doc. No. 15). Respondent filed a reply and further documents in support of the motion to dismiss. (Doc. Nos.

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2019).

[2] The Court applies the "prison mailbox rule" to *pro se* prisoner petitions, deeming the petition filed on the date the prisoner delivers it to prison authorities for forwarding to the clerk of court. *See Saffold v. Newland,* 250 F.3d 1262, 1265, 1268 (9th Cir.2000), *overruled on other grounds, Carey v. Saffold,* 536 U.S. 214 (2002).

18, 19). Thereafter, without obtaining leave of court, petitioner filed a surreply.[3] (Doc. No. 22). For the reasons stated below, the undersigned recommends the District Court grant Respondent's motion to dismiss and dismiss the petition with prejudice as time barred.

## I. BACKGROUND AND APPLICABLE LAW

Lopez is serving a determinate enhanced nine-year state prison sentence stemming from his 2015 plea-based conviction for second-degree robbery entered by the Fresno County Superior Court (Case No. F15904546). (Doc. No. 1 at 1; Doc. No. 12-2 at 1). The petition raises one ground for relief: the trial court's finding that Lopez committed prior offenses, which enhanced his sentence, should have been proven through a jury trial under California law. (*See generally* Doc. No. 1). Respondent contends the petition was filed after the federal statute of limitations elapsed; and, therefore is subject to summary dismissal as untimely. (*See generally* Doc. No. 10). Lopez asserts he is entitled to equitable tolling in opposition. (*See generally* Doc. No. 15, Doc. No. 22). Respondent argues petitioner fails to show an entitlement to equitable tolling. (*See generally* Doc. No. 18).

### A. Standard of Review

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." In *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989), the Ninth Circuit held that a motion to dismiss based on procedural default is proper in habeas proceedings. Since that time, the Ninth Circuit has affirmed cases where habeas petitions were dismissed on a respondent's motion to dismiss for untimeliness. *Orthel v. Yates*, 795 F.3d 935, 938 (9th Cir. 2015) (affirming district court's grant of respondent's motion to dismiss petition as untimely because petitioner "did not establish an

---

[3] Petitioner filed a reply to respondent's reply to petitioner's opposition to respondent's motion to dismiss, which the court construes as a surreply. (Doc. No. 22). Although surreplies are generally disfavored, *see Garcia v. Biter*, 195 F.Supp.3d at 1131 (E.D. Cal. July 18, 2016), the Court construes *pro se* pleadings liberally and will consider petitioner's surreply to the extent relevant for making these findings and recommendations.

2

exceptional circumstance that would warrant equitable tolling"); *Stancle v. Clay*, 692 F.3d 948, 951 (9th Cir. 2012) (same); *Velasquez v. Kirkland*, 639 F.3d 964, 966 (9th Cir. 2011). In doing so, the Ninth Circuit has explicitly relied on information supplied outside the pleadings and its attachments, such as medical records. *Orthel*, 795 F.3d at 940. The undersigned finds because the statute of limitation is a procedural bar, the Court may consider the documents submitted by Respondent for purposes of determining whether Petitioner is entitled to equitable tolling. *Id*. The Court addresses each assertion advanced by Lopez in seriatim.

### B. State Court Proceedings and Statutory Tolling

Title 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, sets a one-year period of limitations to the filing of a habeas petition by a person in state custody. This limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Here, Lopez does not allege, nor does it appear from the pleadings or the record, that the statutory triggers in subsections (B) and (D) apply. Although Petitioner asserts that 28 U.S.C. § 2244(d)(1)(C) should apply to his case, Petitioner's argument is without merit, as discussed *infra*. Thus, the limitations period began to run on the date Lopez' conviction became final. 28 U.S.C. § 2244(d)(1)(A).

Lopez pled guilty to second-degree robbery and was sentenced to nine years in prison on December 11, 2015. (Doc. No. 1 at 1; Doc. No. 12-1). Petitioner did not file a direct appeal of his sentence of conviction. (Doc. No. 10 at 1). Accordingly, Petitioner's conviction became final

under 28 U.S.C. § 2244(d)(1)(A) on February 9, 2016, when the 60 days in which he could have directly appealed his conviction elapsed. *See* Cal. R. Ct. 8.308(a); *Stancle v. Clay*, 692 F.3d 948, 951 (9th Cir. 2012); *Mendoza v. Carey*, 449 F.3d 1065, 1067 (9th Cir. 2006). Therefore, AEDPA's statute of limitations commenced the following day, February 10, 2016, and expired on February 9, 2017.

The federal statute of limitations tolls for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Lopez filed his first state post-conviction motion, a habeas petition in the Fresno California Superior Court, on January 28, 2019. (Doc. No. 12-2). This was nearly two years <u>after</u> AEDPA's statute of limitations ended. Because AEDPA's statute of limitations had expired before petitioner filed his first state habeas petition, Lopez is not entitled to statutory tolling. *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). Thus, the federal petition filed in this court on October 17, 2019 is untimely by 32 months, unless Lopez can demonstrate he is entitled to equitable tolling.

### C. Summary of Petitioner's Assertions and Equitable Tolling

Lopez asserts multiple reasons why he should be afforded equitable tolling. First, Lopez states that he was unable to file his petition without the assistance of his jailhouse lawyer, Mr. Brew, whom he did not get into contact with until early 2019. (Doc. No. 15 at 1; Doc. No. 22 at 5). Second, Lopez asserts that he is mentally impaired. (Doc. No. 22 at 5-9). Lopez states that he is illiterate, can only understand simple English, and has difficulty forming sentences and expressing ideas. (*Id*. at 8, 10). Third, Lopez argues he could not have filed his petition until *People v. Gallardo*, 4 Cal. 5th 120 (2017) was decided. (*Id*. at 6). Next, Lopez contends that he is ignorant of the law and did not understand the need to file his petition in a timely manner. (*Id*. at 6-7). Finally, Lopez claims he suffers from depression and auditory hallucinations, takes anti-depressant medications, and was too depressed to timely file his federal petition. (Doc. No. 22 at 7, 12, 14). Other than pointing to the date he connected with Mr. Brew and the date of the

4

*Gallardo* decision, Lopez otherwise fails to specify by date how his condition impeded his ability to file his federal habeas petition or request assistance from others.

AEDPA's statutory limitations period may be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is available if a petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 649. To show "extraordinary circumstances," a petitioner must show that "the circumstances that caused his delay are both extraordinary and beyond his control"—a high threshold. *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016). "The requirement that extraordinary circumstances 'stood in [a petitioner's] way' suggests that an *external* force must cause the untimeliness. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (emphasis added). Furthermore, petitioner must show that the extraordinary circumstances *caused* the untimely filing of his habeas petition. *See Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (citing *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (explaining that equitable tolling is available only when the extraordinary circumstances were the cause of the petitioner's untimeliness); *Smith v. Davis*, 953 F.3d 582, 595 (9th Cir. 2020) ("Whether an impediment caused by extraordinary circumstances prevented timely filing is a 'causation question.'").

To demonstrate that he has been pursuing his rights diligently, a petitioner must show that he has "been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Davis*, 953 F.3d 5 at 598-99. In other words, "when [a petitioner] is free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id*. at 599. The diligence required for equitable tolling does not have to be maximum feasible diligence, but rather reasonable diligence. *Holland v. Florida*, 560 U.S. at 653. And the court is not to impose a rigid impossibility standard on petitioners, especially not on *pro se* prisoner litigants "who have already faced an unusual obstacle beyond their control during the AEDPA litigation period." *Fue v. Biter*, 842 F.3d 650, 657 (2016) (quoting *Sossa v. Diaz*, 729 F.3d 1225, 1236 (9th Cir. 2013)). However, "in every instance reasonable diligence

5

seemingly requires the petitioner to work on his petition with some regularity—as permitted by his circumstances—until he files it in the district court." *Davis*, 953 F.3d at 601. Because Petitioner must show diligence before, during, and after extraordinary circumstances prevented him from filing, the relevant time period of the court's analysis is February 10, 2016, the day the statute of limitations began to run, to October 21, 2019, the day petitioner filed his federal petition. *See Davis*, 953 F.3d at 598-99. Admittedly, "the threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 2929 F. 3d 1062, 1066 (9th Cir. 2002) (citations omitted).

## III. ANALYSIS

### A. Assistance of Mr. Brew

Petitioner states that he was unable to timely file his petition because he lost contact with his jailhouse lawyer, Mr. Brew, until early 2019. (Doc. No. 15 at 1; Doc. No. 22 at 5). The lack of assistance, however, is but one factor to be considered when determining whether a petitioner acted with diligence. "The 'availability of assistance is an important element to a court's diligence analysis,' but . . . it is only 'part of the overall assessment of the totality of circumstances that goes into the equitable determination.'" *Milam v. Harrington*, 953 F.3d 1128, 1132 (9th Cir. 2020) (quoting *Bills*, 628 F.3d at 1101). "The petitioner . . . always remains accountable for diligence in pursuing his or her rights." *Bills*, 628 F.3d at 1100. A lack of access to a jailhouse lawyer is an "'ordinary prison limitation.'" *Dominguez v. Paramo*, No. 5:16-CV-00816-JVS (SK), 2017 U.S. Dist. LEXIS 13419, at *5 (C.D. Cal. Jan. 31, 2017) (quoting *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009)).

Here, the lack of Mr. Brew's assistance is an ordinary prison limitation. Moreover, Lopez has not stated that he took any steps to seek assistance from any other legal assistants during the relevant more than two- and one-half year period. Indeed, Lopez suggests that he did not trust other jailhouse lawyers or legal assistants and appears to have preferred Mr. Brew. *See* Doc. 22 at 12 (stating he could not "trust any other legal person besides the legal assistant preparing this document."); *id.* at 17 (stating he "personally" knew Mr. Brew "to be worthy of the assistance."). Lopez could have availed himself of the help of another jailhouse lawyer or asked for assistance

from the educational staff at his prison. Lopez fails to show how his loss of contact with Mr. Brew was an extraordinary circumstance that prevented him from timely filing his petition. Moreover, Lopez fails to show that he acted with diligence during the time his jailhouse lawyer was not available.

### B. Mental Impairment

In *Calderon v. United States*, the Ninth Circuit acknowledged that a "habeas petitioner's mental incompetency [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control" which might justify equitable tolling. 163 F.3d 530, 541 (9th Cir. 1998), reversed on other grounds by *Woodford v. Garceau*, 538 U.S. 202, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003). This requires the petitioner to demonstrate "a mental impairment so severe that the petitioner was unable personally either to understand the need to timely file or prepare a habeas petition, and that impairment made it impossible under the totality of the circumstances to meet the filing deadline despite petitioner's diligence." *Bills v. Clark*, 628 F.3d 1092, 1093 (9th Cir. 2010). "A petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure." *Id*. at 1093. "The petitioner therefore always remains accountable for diligence in pursuing his or her rights." *Id*. at 1100. A habeas petitioner must show that "mental incompetence in fact caused him to fail to meet the AEDPA filing deadline." *Laws v. Lamarque*, 351 F.3d 919. 923 (9th Cir. 2003).

> To obtain equitable tolling because of mental impairment:
>
> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either:
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

7

*Milam v. Harrington*, 953 F.3d 1128, 1132 (9th Cir. 2020) (quoting *Bills*, 628 F.3d at 1099-1100). Equitable tolling for a mental impairment does not "require a literal impossibility," but instead only "a showing that the mental impairment was "a but-for cause of any delay." *Forbess v. Franke*, 749 F.3d 837, 841 (9th Cir. 2014) (quoting *Bills*, 628 F.3d at 1100).

Here, Lopez claims that he is illiterate, can only understand simple English, and has difficulty forming sentences and expressing ideas. (Doc. No. 22 at 8, 10). Lopez does not provide any documentation to substantiate that his mental impairments prevented him from timely filing a habeas petition on his own or with the another's assistance. Respondents submit petitioner's prison records, including documents from: Classification (Doc. No. 19-1); Administrative Segregation (Doc. No. 19-2); Institutional Appeals (Doc. No. 19-3); Institutional Definitions (Doc. No. 19-4); Mental Health (Doc. No. 19-5; 19-6); Suicide Risk Evaluations (Doc. No. 19-7); Level of Care (Doc. No. 19-8); Nursing Reports (Doc. 19-9); Interdisciplinary Progress Notes (Doc. No. 19-10); and Work and Education Assignments (Doc. No. 19-11). Lopez had an NDD (non-designated disability) designation from January 5, 2016 to March 18, 2019. (Doc. No. 19-3 at 15; Doc. No. 19-4 at 1; Doc. No. 22 at 11). The NDD designation means the prisoner does not require "adaptive support services to function in Institution settings" and has "no substantial deficits in self-care, ADL (activities of daily living), social skills, or *self-advocacy* due to cognitive disability." (Doc. No. 19-10 at 3, Doc. No. 19-4 at 1) (emphasis added). Essentially, Lopez had communication issues due to a low TABE (Test for Adult Basic Education) score. (Doc. No. 19-2). However, effective communication could be achieved by using simple English, speaking slowly and clearly, repeating and rephrasing information, and confirming he understood. (*Id*).

"Ordinarily illiteracy and *pro se* status are not extraordinary circumstances or external factors that may excuse the many and oftentimes complex procedural requirements a prisoner encounters when seeking federal habeas corpus relief." *Barnett v. Knowles*, No. C 04-2782 JF (PR), 2006 U.S. Dist. LEXIS 24850, at *14 (N.D. Cal. Mar. 29, 2006). However, a non-English speaking petitioner may be entitled to equitable tolling if he can demonstrate that he was unable, despite diligent efforts, to procure legal materials in his language or to obtain translation

8

assistance. *Mendoza v. Carey*, 449 F.3d 1065, 1069-71 (9th Cir. 2006). But the petitioner must show "sufficiently extraordinary circumstances to gain equitable tolling for these reasons." *Stableford v. Martel*, No. SA CV 09-01071 JST (RZ), 2010 WL 5392763, at *3 (C.D. Cal. Sept. 14, 2010) (rejecting petitioner's argument that he was entitled to equitable tolling because he was illiterate, dyslexic, generally uneducated and had only limited access to an inadequate prison law library on the grounds that "[n]one of these circumstances is sufficiently extraordinary to warrant tolling"); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 909 (9th Cir.1986) (in a pre-AEDPA case, holding that the illiteracy of the pro se petitioner was not a sufficient objective, external factor amounting to "cause" for failure to present a claim to the state supreme court).

Here, the records fluctuate as to the level of petitioner's impairment. On May 10, 2016 when being placed in administrative segregation, Lopez was deemed illiterate due to a low TABE score, was not fluent in English, and was not able to "understand issues." (Doc. No. 19-2 at 7). During this time, the record reflects that Lopez "refused to sign" the notice, suggesting he may have been uncooperative. (*Id*). This one incident is contrasted with the other records, which show Lopez was literate and understood English. For example, on January 5, 2016 he stated that he reads while in prison and currently was reading a book. (Doc. No. 19-10 at 11). He also stated that he was writing letters to his relatives. (Doc. No. 19-10 at 5). Lopez was enrolled in various educational classes during the relevant time period where he studied reading comprehension, math, and other subjects. (*See generally* Doc. No. 19-11).

Further, the records show that Lopez was able to express himself during the relevant time period. For example, there are numerous forms indicating that he had "effective communication."[4] (*See generally* Doc. No. 19-1). The forms state that Lopez reiterated, in his own words, what was explained and provided appropriate substantive responses to questions asked. (*Id.*). Lopez stated he did not need any assistance for effective communication and that

---

[4] The effective communication forms are dated: March 11, 2016; March 17, 2016; April 15, 2016; April 21, 2016; June 16, 2016; June 22, 2016; September 30, 2016; December 9, 2016; February 27, 2017; July 25, 2017; August 15, 2017; February 28, 2018; May 22, 2018; and November 21, 2018. (*See generally* Doc. No. 19-1).

9

simple English spoken clearly and slowly was sufficient for communication.  (*Id.*).  Accordingly, petitioner fails to show a mental impairment sufficiently severe to prevent him from timely filing his federal petition.

Most telling is Lopez's ability to file health care services request forms, internal prison administrative appeals, and state habeas petitions during the relevant time period.  On December 27, 2016, Lopez submitted a health care services request form, requesting to stop his psychiatric medication.  (Doc. No. 19-10 at 109).  On May 12, 2017, he submitted another health care services request form, requesting to speak to his doctor about his mental health medications.  (Doc. No. 19-10 at 121).  On June 6, 2018, Lopez sought a bottom bunk through his prison's administrative review process.  (Doc. No. 19-3 at 1, 3).  On March 18, 2019, he again sought administrative review, seeking a pair of shoes.  (Doc. No. 19-3 at 9).  Moreover, Lopez filed three state court habeas petitions during the relevant time period.  (Doc. No. 10 at 2).  Lopez counters that he did not personally write the institutional appeals.  (Doc. No. 22 at 4).  However, even if he did not personally write the appeals, he was able to "self-advocate" and procure assistance in submitting these requests, appeals, and petitions.  (Doc. No. 19-4).

Lopez's ability to file these various requests, administrative appeals and state habeas petitions during the relevant time period belies his assertion that his mental state prevented him from timely filing his federal petition.  *See Gaston v. Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2005), *modified on other grounds*, 447 F.3d 1165 (9th Cir. 2006) ("Because [petitioner] was capable of preparing and filing state court petitions [during the limitations period], it appears that he was capable of preparing and filing a [federal] petition during the time in between those dates.");  *Walker v. Schriro*, 141 Fed. App'x. 528, 530-31 (9th Cir. 2005) (holding that where petitioner was able to complete various filings in state court close to the dates of his AEDPA filing period, the district court reasonably concluded that he was capable of filing his federal petition on time and was not entitled to equitable tolling); *Almanza v. Ryan*, No. CV-15-2064-PHX-DLR (JFM), U.S. Dist. LEXIS 168738, at *24 (D. Az. Sept. 27, 2019) ("Petitioner's ability to file other relevant, written filings within the limitations period shows . . . his illiteracy was not the cause of his untimeliness.").

10

Accordingly, Lopez shows no mental impairment "so severe" that he could not rationally or factually understand the need to timely file his federal petition or that his mental state rendered him unable to prepare and file his federal habeas petition—especially considering he was able to file multiple other petitions and administrative appeals during the relevant period. *Milam*, 953 F.3d at 1132. Further, Lopez has not shown diligence during the relevant time period. Although there were time periods where it appears Lopez may have required assistance with communication, the bulk of the time he did not. Nor does Lopez state what steps he took to diligently pursue his rights when he did not have impairments.

### C. *Gallardo* Opinion

Petitioner's argues he could not have filed his federal petition until after the California Supreme Court's decision in *Gallardo*. (Doc. No. 1 at 18); *see People v. Gallardo*, 4 Cal. 5th 120 (2017). As an initial matter, *Gallardo* was decided on December 21, 2017, two years before petitioner filed the instant petition. And even if *Gallardo* had been decided on a later date, petitioner has not demonstrated the applicability of this California state case to his federal habeas petition. *Gallardo* accordingly does not excuse petitioner's untimeliness.

To the extent Petitioner argues that the *Gallardo* opinion should afford Petitioner a later start date of the statute of limitations under 28 U.S.C. § 2244(d)(1)(C), he is mistaken. (Doc. No. 22 at 18-19). The provisions of 28 U.S.C. § 2244(d)(1)(C) allow the statute of limitations to run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Here, Lopez relies on *Gallardo*, a California case. Because *Gallardo* is not a U.S. Supreme Court decision made retroactive to cases on collateral review, Lopez is not entitled to a later start date of the statute of limitations.

Alternatively, to the extent that Lopez argues § 2244(d)(1)(D) is the correct trigger, a change in controlling law does not constitute a "factual predicate" as that term is used within the statutory framework of § 2244(d)(1)(D). *Shannon v. Newland*, 410 F.3d 1083, 1088-89 (9th Cir. 2005) (rejecting petitioner's claim that subsequent California Supreme Court decision clarifying state law qualified as a factual predicate for purposes of § 2244(d)(1)(D) reasoning "[i]f a change

in (or clarification of) state law, by a state court, in a case in which [the petitioner] was not a party, could qualify as a 'factual predicate,' then the term 'factual' would be meaningless."). *See also Easter v. Taylor*, 714 F. App'x 791, 792 (9th Cir. 2018) (affirming the district court's rejection of petition as untimely and rejecting subsequent change in Oregon law qualified as factual predicate under § 2244(d)(1)(D) citing *Shannon*). Thus, *Gallardo* has no tolling effect to Lopez' federal petition.

### D. Ignorance of the Law

Lopez generally argues that his ignorance of the law is an extraordinary circumstance that prevented him from timely filing. (Doc. No. 22 at 6-7). His argument is unavailing. "A *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013, n.4 (9th Cir. 2009) ("While [petitioner's] pro se status is relevant, we have held that a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling); *Williamson v. Hubbard*, 27 Fed. App'x. 733, 2001 (9th Cir. 2001) (holding misunderstanding of the law does not entitle petitioner to equitable tolling). Thus, Lopez should not be granted equitable tolling because of his ignorance of the law.

### E. Mental Illness

In cases of mental illness, courts have required a petitioner to show that his symptoms were so severe as to prevent him from timely filing his petition. *See Taylor v. Knowles*, No. CIV S-07-2253 WBS EFB P, 2009 U.S. Dist. LEXIS 20110, at *19 (E.D. Cal. 2009) (finding that a petitioner who suffered from schizophrenia, depression, and auditory hallucinations failed to show how these ailments actually prevented petitioner from filing his federal habeas petition in a timely manner). Depression does not necessarily make an inmate incompetent to file a habeas petition. *See Howell v. Roe*, No. C 02-1824 SI (pr), 2003 U.S. Dist. LEXIS 2458, at *13, (C.D. Cal. 2003) (finding that a petitioner who was suicidal for a period years before the filing deadline failed to show how his mental state prevented him from timely filing his habeas petition and noting that "being suicidal and/or depressed does not make an inmate incompetent"); *Day v. Ryan*, No. CV-13-0952-PHX-GMS (JFM), 2014 U.S. Dist. LEXIS 34630, at *18 (D. Az. 2014)

(finding that a petitioner's "vague descriptions of depression and despondency" did not excuse his filing delay and noting that such emotional states are "not at all uncommon among those serving a life sentence").

Additionally, a petitioner's participation in other activities during the time period in question and the petitioner's ability to file other kinds of legal and administrative petitions during the relevant time period belie a petitioner's claim that depression or other mental illness prevented him from timely filing a habeas petition. *See Porteous v. Fisher*, No. 2:15-cv-1817 GEB KJN P, 2016 U.S. Dist. LEXIS 105849, at *72 (E.D. Cal. 2016) (finding that petitioner's employment and participation in educational classes demonstrated that he was not so depressed as to be prevented from filing a timely federal habeas petition).

Lopez states he suffered from depression and auditory hallucinations, took anti-depression medication, and was too depressed to timely file his federal petition. (Doc. No. 22 at 7, 12, 14). As an initial matter, Lopez was placed in the Correctional Clinical Case Management System ("CCCMS") on December 22, 2015. (Doc. No. 19-1 at 11; Doc. No. 22 at 12). Inmates designated to this level of care are those "whose symptoms are under control or in partial remission and can function in the general prison population, administrative segregation, or segregated housing units." *Coleman v. Schwarzenegger*, No. CIV S-90-0520 LKK JFM P, 2009 WL 2430820, at *15 n.24 (E.D. Cal. 2009). The documents reflect Lopez remained in the CCCMS designation for the entire relevant time period. (Doc. No. 19-1 at 11, 17, 23, 29, 35, 43, 49; Doc. No. 19-9). Also, at some time before March 16, 2016, Lopez was placed in the Mental Health Services Delivery System. (Doc. No. 19-5 at 15). This continued through at least October 5, 2016. (*Id*. at 17, 19 23 27).

In his February 10, 2016 initial psychiatric consultation upon entering prison, Lopez reported that he suffers from depression, anxiety, and auditory hallucinations. (Doc. No. 19-10 at 31). Lopez' subsequent medical records reveal he suffered from continued depression, anxiety, and auditory hallucinations and took medication for depression through at least October 2016. (Doc. No. 19-7 at 1, 5; Doc. No. 19-8 at 57; Doc. No. 19-6 at 3, 7). However, there were times when Lopez reported a reduction in symptoms. For example, on May 4, 2016 Lopez reported

lessened depression and anxiety, rating his symptoms as a "3 out of 10" and "1 out of 10" respectively. (Doc. No. 19-8 at 41, 47). Lopez also reported a reduction in auditory hallucinations on the same date stating the "voices [were] not as frequent as before." (Doc. No. 19-8 at 41). A mental health progress report shows that his auditory hallucinations were fluctuating. (*Id*. at 45). Again, on July 21, 2016, Lopez reported a reduction in his mental illness symptoms. (Doc. No. 19-8 at 93). An October 13, 2016 mental health treatment plan stated Lopez did not appear depressed. (Doc. No. 19-8 at 109). And, on September 18, 2018, Lopez did not exhibit any "obvious signs of anxiety or depression." (Doc. No. 19-3 at 25).

Further, Lopez was enrolled in educational classes, had work placements, and participated in group therapy during the relevant period. (*See generally* Doc. No. 19-11; Doc. No. 19-3 at 15). He was given satisfactory reviews for his educational programs in 2017 and 2018. (Doc. No. 19-11 at 25, 31, 53). And as stated *supra*, Lopez was able to file two healthcare request forms, two administrative appeals, and three state habeas petitions during the relevant time period. Accordingly, Lopez fails to show that his mental health issues were so severe during the relevant time period as to prevent him from timely filing his federal petition.

Nor does Lopez demonstrate he was diligent during the time periods in which he was not suffering from mental illness. Lopez does not state that he worked diligently on his state and federal habeas petition during the time periods when his depression symptoms abated or when his auditory hallucinations subsided. *See Davis*, 953 F.3d at 601. He also does not state that he sought assistance from others, besides Mr. Brew, in filing his federal petition.

Based upon a review of the record, the undersigned finds Lopez fails to carry his burden of demonstrating that any of the reasons he cites constitute extraordinary circumstances, or that he exercised diligence. Thus, the undersigned recommends that Lopez be denied equitable tolling and his petition be dismissed with prejudice as untimely.

F. Evidentiary Hearing

Petitioner incorporated a request for an evidentiary hearing on the issue of equitable tolling in his surreply. (Doc. No. 22 at 10). "Where the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely

14

filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence." *Orthel v. Yates*, 795 F.3d 935, 938-39 (9th Cir. 2015) (quoting *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010). Here, respondent submitted Lopez' prison records, including his health and educational records. The court accepted Lopez' surreply (Doc. No. 22), which permitted further development of the record. Accordingly, the court finds that the record is thoroughly developed as to each of Lopez' allegations he cites in support of his equitable tolling argument. Therefore, the court finds an evidentiary hearing is not warranted on the issue.

## IV. CERTIFICATE OF APPEALABILITY

State prisoners in a habeas corpus action under § 2254 do not have an automatic right to appeal a final order. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). To appeal, a prisoner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2); *see also* R. Governing Section 2254 Cases 11 (requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner); Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). Where, as here, the court denies habeas relief on procedural grounds without reaching the merits of the underlying constitutional claims, the court should issue a certificate of appealability only "if jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id*. Here, reasonable jurists would not find the undersigned's conclusion debatable or conclude that petitioner should proceed further. The undersigned therefore recommends that a certificate of appealability not issue.

Accordingly, it is RECOMMENDED:

1. Respondent's motion to dismiss (Doc. No. 10) be GRANTED.
2. The petition (Doc. No. 1) be DISMISSED with prejudice.
3. Petitioner be denied a certificate of appealability.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A response to any Objections must be file within fourteen (14) of the date of service of the Objections. Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: June 2, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE